**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,  )
           )
  v.         )   Criminal No. 07-425
           )   Civil No. 10-1449
JAMES RAYMOND ZWICK,  )
           )
    Defendant.   )

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a motion to vacate, correct or set aside sentence under 28

U.S.C. § 2255 filed by Defendant James Raymond Zwick.  (Docket No. 59).  Defendant

maintains that he was sentenced in violation of his due process rights and that his trial counsel

provided ineffective assistance of counsel to him by failing to move to dismiss the charge against

him under the Interstate Agreement on Detainers Act, 18 U.S.C. App. 2, § 2, and by failing to

raise certain arguments at sentencing.  (Docket Nos. 59, 60, 66).  The Government opposes

Defendant's motion; arguing that Defendant's claims are procedurally defaulted and otherwise

lack merit.  (Docket No. 65).  Upon consideration of the parties' submissions, and for the

following reasons, Defendant's motion [59] is denied.

### II. BACKGROUND

As set forth in the Presentence Investigation Report, Defendant has an extensive criminal

history including numerous criminal convictions in the state courts of both Pennsylvania and

Florida.  (PIR at ¶¶ 24-61).  These convictions resulted in the assessment of 30 criminal history

points and the assignment of Defendant to criminal history category VI.  (PIR at ¶ 62).  Two of

these state matters are pertinent here: (1) a conviction for robbery-bodily injury at CC200705412

in the Court of Common Pleas of Allegheny County arising from events which occurred on December 27, 2006; and, (2) convictions for habitual offenders, possession of a controlled substance, possession of drug paraphernalia, careless driving, driving while operating privileges suspended at CC200703956, also in the Court of Common Pleas of Allegheny County arising from events which occurred on February 19, 2007.  (PIR at ¶¶ 59, 60).  Defendant was released on bond at both of these cases.  (Docket No. 59 at ¶ 4; Docket No. 65 at ¶ 5).

On November 26, 2007, Defendant robbed a Citizens Bank branch located at 495 Lincoln Avenue, Bellevue, Allegheny County, Pennsylvania.  (PIR at ¶ 4).  He handed the teller at the bank a demand note which stated that he was in possession of a firearm.  (PIR at ¶ 4).  The teller turned over $850.00 and a dye pack to Defendant.  (PIR at ¶ 5).  He then exited the bank and the dye pack exploded.  (PIR at ¶ 5).  Defendant was later apprehended by local police while running through neighborhood back yards.  (PIR at ¶ 5).  His jacket, stained with red dye, was recovered by the officers.  (PIR at ¶ 5).  Defendant was charged with state robbery charges by local police and was detained at the Allegheny County Jail.  *See* Docket Reports at Magisterial District Court No. 05-2-01; Docket No. CR-473-07.  Defendant made bail on November 30, 2007.  (*Id*.).

However, at this time, Defendant remained on bond from the two prior state cases, CC200705412 and CC200703956.  (Docket No. 59 at ¶ 4; Docket No. 65 at ¶ 5).  The state court dockets reflect that bail pieces and body receipts were filed at both cases on December 3, 2007.  (*Id*.).  Accordingly, he remained detained at the Allegheny County Jail.

On December 4, 2007, a federal grand jury returned a one count indictment against Defendant, charging him with bank robbery in violation of 18 U.S.C. § 2113(a), arising from the Citizens Bank robbery on November 26, 2007.  (Docket No. 1).  A warrant was issued for Defendant's arrest on December 5, 2007.  (Docket No. 3).  On December 6, 2007, the

Government moved the Court for a writ of habeas corpus *ad prosequendum*, and said motion was granted. (Docket Nos. 5, 6). The writ was issued and a hold was placed on Defendant by the U.S. Marshal Service at the Allegheny County Jail. (Docket No. 7; Docket No. 59 at ¶ 5).

Defendant appeared before Judge Jeffrey Manning on December 12, 2007 in reference to the aforementioned state cases at docket numbers CC200705412 and CC200703956. (Docket No. 59 at ¶¶ 10, 11). He pled *nolo contendre* to the charges at both cases. (PIR at ¶¶ 59, 60). At case number CC200705412, he was sentenced to "12 to 24 months imprisonment concurrent to any other sentences currently serving or will serve." (PIR at ¶ 59). At case number CC200703956, Defendant was sentenced to 2 years probation to be served consecutive to the sentence imposed at CC200705412 at count one and no further penalty at the remaining counts. (PIR at ¶ 60).

Thereafter, on December 28, 2007, Defendant made his initial appearance in federal court before Magistrate Judge Francis X. Caiazza. (Docket Nos. 7, 8). Judge Caiazza also issued an order of temporary detention on that date, which specified that Defendant shall remain in the custody of the federal government pending arraignment and detention proceedings on January 3, 2008. (Docket No. 11).

After his initial appearance in federal court, on January 2, 2008, Defendant was transported by the Allegheny County Sheriff or other state officials to the State Correctional Institution in Greene County, Pennsylvania, despite Judge Caiazza's Order that he remain in federal custody. (Docket No. 59 at ¶ 13; Docket No. 65 at ¶ 5; Docket No. 50 at 3). Because of Defendant's transfer to SCI-Greene, his arraignment was continued and rescheduled for January 17, 2008. (Docket No. 59 at ¶ 14; Docket No. 65 at ¶ 5). Then, on January 8, 2008, Defendant was returned to the Allegheny County Jail. (Docket No. 59 at ¶ 13; Docket No. 65 at ¶ 5).

Defendant was arraigned on January 17, 2008 before Magistrate Judge Robert C. Mitchell. (Docket No. 15). At the arraignment, Defendant pled not guilty to count one. (*Id.*). He also waived his right to a detention hearing, and Judge Mitchell accepted the waiver. (Docket No. 17).

Defendant pled guilty to count one of the Indictment before this Court on May 9, 2008. (Docket No. 25, 26). There was no plea agreement between the parties. (Docket No. 26). The Court found that Defendant's plea was knowingly and voluntarily made and accepted his plea. (Docket No. 46). A presentence order was issued wherein pre-sentence deadlines were established and the matter was set for sentencing on September 30, 2008. (Docket No. 27).

After considering the positions with respect to sentencing factors filed by both parties and the Government's reply to Defendant's position, the Court issued its Tentative Findings and Rulings on September 23, 2008. (Docket Nos. 29, 32, 34, 35). In their filings, the parties did not object to the advisory guideline range calculated by the Probation Office. (Docket Nos. 29, 32, 34). Therefore, after ruling on some tangential factual disputes, the Court tentatively ruled that, based on a total offense level of 21 and a criminal history category of VI, the advisory guideline range for imprisonment was 77-96 months. (Docket No. 35). The Court also noted that Defendant was subject to a maximum term of imprisonment of twenty years pursuant to 18 U.S.C. § 2113(a). (*Id.*).

Prior to sentencing, Defendant, through his trial counsel, filed a Sentencing Memorandum, wherein he argued that the Court should vary from the advisory guideline range and sentence him to a term of imprisonment below the range of 77-96 months. (Docket No. 36). His argument relied primarily on his personal history and characteristics, including his physical

health ailments, substance abuse problems – for which he was in need of treatment, and gainful employment as a boilermaker. (*Id.*).

The sentencing hearing was held on September 30, 2008. (Docket No. 37). Defendant's trial counsel reiterated the arguments set forth in the Sentencing Memorandum and argued for a variance from the advisory guideline range at sentencing. (Docket No. 44 at 17-22, 29-36, 37-42). In contrast, Government counsel argued that a sentence at the high end of the guidelines range was appropriate after considering all of the section 3553(a) factors. (Docket No. 44 at 22-29, 35-37). Counsel for both parties offered argument concerning Defendant's prior criminal history and the weight to be afforded to same by the Court in imposing Defendant's sentence. The Court questioned Defendant regarding the length of the state sentence that he was serving at that time. (Docket No. 44 at 46). Consistent with the presentence investigation report, Defendant testified that he was subject to a 1-2 year sentence. (*Id.*). Despite the argument regarding Defendant's prior criminal history and the acknowledgment that he was then serving a state sentence, neither counsel specifically raised whether the Defendant's federal sentence should run concurrently or consecutively to the federal sentence at the proceeding. (*See* Docket No. 44).

After hearing the parties' arguments, the Court denied Defendant's motion for variance and sentenced Defendant to 77 months in prison, to be followed by 3 years of supervised release, ordered that Defendant pay restitution in the amount of $1,143 and a special assessment in the amount of $100, but waived any fine. (Docket No. 44 at 47-51). The Court further ordered that Defendant's "sentence shall be served concurrently to the one being served in the state court." (Docket No. 44 at 47). In so ordering, the Court made no recommendations to the Bureau of Prisons that Defendant should be granted "credit" for time served on his state sentence.

On October 8, 2008, Defendant appealed his sentence to the United States Court of Appeals for the Third Circuit. (Docket No. 40). On appeal, he argued that this Court improperly lengthened his sentence for the purpose of rehabilitation contrary to the Court of Appeals' holding in *United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007). The Court of Appeals rejected Defendant's arguments and affirmed his sentence in a non-precedential opinion issued on November 3, 2009. *United States v. Zwick*, 350 Fed.Appx. 747 (3d Cir. 2009) (non-precedential). The Court of Appeals then issued a mandate consistent with this opinion on November 27, 2009. (Docket No. 48).

Subsequent to imposition of the federal sentence on September 30, 2008, Defendant "was transferred to a state correctional facility and was released from the state sentence imposed by Judge Manning on October 22, 2008." (Docket No. 59 at ¶ 19; Docket No. 62). He has remained in federal custody since that date. (*Id*.).

After his appeal was denied, in March and July of 2010, Defendant submitted a series of letters to the Court, wherein he stated that his federal sentence was being improperly executed by the Bureau of Prisons. (Docket Nos. 49, 50, 52). His chief complaint was that his federal and state sentences were not run concurrently by the Bureau of Prisons, despite the fact that Judge Manning had ordered that his state sentence should run "concurrent to any other sentences currently serving or will serve" and this Court had also ordered that his sentence run concurrently to the state sentence to which he was subject. (*Id*.). He further pointed out that this Court's judgment entered on September 30, 2008 did not reflect that his sentence should run concurrently to the state sentence, as was stated orally by the Court at sentencing. (*Id*.).

In response to Defendant's *pro se* submissions, the Court reviewed Defendant's file and then issued the following order:

AND NOW, this 9th day of July, 2010, upon consideration of the Defendant's Notice of Petition [50] filed in the above captioned matter on March 25, 2010, and the Defendant's Motion to Appoint Counsel [52] and the Court having reviewed the Transcript of the Sentencing Hearing held September 30, 2008, the Court finds that:

1.   The Transcript of the Sentencing Hearing held September 30, 2008 indicates that the Court did order the Defendant's federal sentence to be served concurrently with his state sentence. (Docket No. 44 at 47).
2.   The Judgment (Docket No. 38) did not reflect the Court's oral order that the Defendant's federal sentence to be served concurrently with his state sentence.

Accordingly, IT IS HEREBY ORDERED THAT, pursuant to Federal Rule of Criminal Procedure 36, the Judgment including Sentence under the Sentencing Reform Act imposed by this Court and entered on the docket on September 30, 2008 [38], is AMENDED as follows:

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of seventy-seven (77) months. This sentence shall be served concurrently with the one being served in state court.

In all other respects, the Sentence imposed by this Court and entered on the docket on September 30, 2008 shall remain in FULL FORCE AND EFFECT.

(Docket No. 53).[1]

Defendant also moved the Court for counsel to be appointed to represent him, the Court granted his motion and his present counsel was appointed on July 9, 2010.  (Docket No. 54, 55). Defendant's appointed counsel then requested that the Court hold a status conference on the matter, and two status conferences were held, the first of which was held on September 28, 2010

---

[1]

The Court notes that when there is a conflict between a court's oral pronouncement of sentence and written judgment and commitment order, the oral pronouncement controls.  *See United States v. Chasmer*, 952 F.2d 50, 52-3 (3d Cir. 1991); *see also Escribano v. Schultz*, 330 Fed.Appx. 21, 23 (3d Cir. 2009) (not precedential).   "Rule 36 is normally used to correct a written judgment of sentence to conform to the oral sentence pronounced by the judge." *United States v. Bennett*, 423 F.3d 271, 278 (3d Cir. 2005).  Rule 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."  Fed.R.Crim.P. 36.  Neither party has questioned this Court's authority to amend its judgment as set forth in the July 9, 2010 Order.

and the second, on October 13, 2010. (Docket Nos. 56, 57). After discussion at the second conference, defense counsel indicated that he would be filing a motion to vacate under section 2255 on Defendant's behalf and the Court set a briefing schedule related to same. (Docket No. 57).

Defendant filed the pending motion to vacate and his brief in support on November 1, 2010. (Docket Nos. 59, 60). His counsel later filed a letter on November 15, 2010, wherein he corrected one of the factual statements set forth in the initial motion. (Docket No. 62). In support of his motion, Defendant has submitted two exhibits: (1) a Sentence Monitoring Computation Data as of 07-15-10, prepared by the Bureau of Prisons; and (2) a letter dated October 12, 2010 from Jose A. Santana, Chief, U.S. Department of Justice, Federal Bureau of Prisons, Designation and Sentence Computation Center. (Docket Nos. 59-1, 59-2).

The Computation Data Sheet states that Defendant was released from his state sentence on October 22, 2008, and that his federal sentence commenced as of that date.[2] (Docket No. 59-1). According to this document, the Bureau of Prisons projects that Defendant will be released from incarceration on April 12, 2014. (*Id*.). In his letter, Mr. Santana writes that Defendant "has received all applicable jail credit" and that his "sentence computation has been calculated and

---

[2]

The Computation Data Sheet provides, in pertinent part, as follows:

| Date Computation Began | 10-22-2008 |
|---|---|
| Total Term in Effect | 77 months |
| Total Term in Effect Converted | 6 years 5 months |
| Earliest Date of Offense | 11-26-2007 |
| Jail Credit | From 02-19-2007 thru 04-01-2007 |
| Total Prior Credit Time | 42 |
| Total Inoperative Time | 0 |
| Total GCT Earned and Projected | 301 |
| Total GCT Earned | 54 |
| Statutory Release Date Projected | 04-12-2014 |
| Expiration Full Term Date | 02-07-2015 |
| Projection Satisfaction Date | 04-12-2014 |

(Docket No. 59-1).

certified by the Designation and Sentence Computation Center and is correct." (Docket No. 59-2).  However, he further writes that if Defendant is dissatisfied with this calculation, "he may appeal through the established administrative remedy procedures."  (*Id*.).[3]

After receiving an extension of time from the Court, the Government filed its opposition to Defendant's motion on November 30, 2010.  (Docket No. 65).  Finally, Defendant filed his reply brief on December 3, 2010.  (Docket No. 66).  As all briefing has concluded, Defendant's motion is ripe for disposition.

III. LEGAL STANDARD

Defendant filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Defendant "is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution."  *Hernandez v. United States*, Civ. A. No. 07-752, 2008 WL 3843510, at *2 (D.N.J. Aug. 14, 2008).

In order for a district court to correct a defendant's sentence pursuant to section 2255, it must find "that . . . judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment

---

[3]     The Court notes that the present facts do not demonstrate that Defendant has invoked the appeals procedure.  Moreover, a review of the docket in the United States District Court for the Middle District of Pennsylvania shows that Defendant has not filed a § 2241 petition in that district.

vulnerable to collateral attack." *Garcia v. United States*, Criminal Action No. 93-536-03, Civil Action No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted). A defendant bears the burden of establishing his entitlement to § 2255 relief. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a defendant's § 2255 petition is a collateral attack on his sentence, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn*, Criminal Action No. 92-61-02, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Section 2255 is properly invoked to challenge the validity of a defendant's sentence. *United States v. Eakman*, 378 F.3d 294, 297 (3d Cir. 2004). In contrast, challenges to the execution of a defendant's sentence, i.e., how the defendant's sentence is calculated and carried out by the Bureau of Prisons, must be raised in a § 2241 petition, brought against the custodian of the institution where the defendant is incarcerated. *Id.* Section 2255 petitions are heard by the sentencing court, while § 2241 petitions must be filed in the judicial district where the defendant is incarcerated.[4] 28 U.S.C. § 2241(a).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980). If a hearing is not held, the district judge must

---

[4]     Defendant is presently incarcerated at Canaan United States Penitentiary in Waymart, Pennsylvania, which is located in the Middle District of Pennsylvania. (Docket No. 59-2). Thus, this Court does not have jurisdiction over any section 2241 petition that he may file. As noted *supra*, based on a review of the docket in the Middle District, Defendant has not filed a section 2241 petition in that district as of this date.

accept the movant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't. of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). The Court resolves the pending motion without holding a hearing because, for the reasons set forth *infra*, assuming Defendant's allegations as true, he is not entitled to the relief requested in his § 2255 petition.

IV.   DISCUSSION

This action involves the interplay between federal and state sentences imposed by this Court and the Honorable Jeffrey Manning in the Court of Common Pleas of Allegheny County. The sentences were imposed at different times but both were ordered to run "concurrent": Judge Manning sentenced Defendant on December 12, 2007 to "12-24 months imprisonment concurrent to any other sentences currently serving or will serve" and, later, on September 30, 2008, this Court sentenced Defendant to seventy-seven months incarceration "to be served concurrently to the one being served in state court." (*See* PIR at ¶ 59; Docket Nos. 44 at 47; 53).

In his *pro se* submissions, Defendant argued that these sentences should run fully concurrent and, particularly that his federal sentence should have commenced as of December 12, 2007 (or earlier). (Docket Nos. 49, 50, 52). His appointed counsel concedes that this is not the case. (*See* Docket No. 66 at 3 (the "calculations by the BOP involved no exercise of discretion whatsoever but rather were made entirely consistent with existing statutory requirements"); at 4 ("clearly no credit was capable of being afforded here"); at 5 ("the claim here is based upon an objectively ascertainable error – that credit would be afforded where, as a matter of law, no such credit could be had")). Instead, counsel argues on Defendant's behalf that Defendant was sentenced in violation of his due process rights because the Court allegedly relied on misinformation regarding whether "presentence credit" would be awarded to Defendant by

11

the Bureau of Prisons for the time he served in presentence custody prior to his sentencing. (*Id.*). Alternatively, Defendant maintains that his trial counsel was ineffective for failing to bring to the Court's attention that he would receive no presentence credit and for not moving for a downward departure or adjustment to the length of his sentence under Guideline § 5G1.3 at sentencing.[5] (Docket Nos. 59, 60).

Before the Court addresses the merits of the parties' arguments, a brief recitation of the applicable law is appropriate. A federal sentence of "imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is being served." 18 U.S.C. § 3585(a). Thus, the earliest a sentence of imprisonment commences for purposes of section 3585(a) is the date of sentencing and a district court is without authority to backdate a sentence to commence prior to the date that a sentence of imprisonment is imposed. *See United States v. Gaskins*, No. 09-2954, 2010 WL 3584505, at *3 (3d Cir. Sept. 16, 2010) (not published) (holding that the district court lacked authority under section 3585(a) to order that a sentence commence as of the date of the change of plea proceeding). Pursuant to 18 U.S.C. § 3584 and Guideline § 5G1.3, a district court has the authority to order that a term of imprisonment run consecutively or concurrently to another term of imprisonment imposed either at the same time or prior to the imposition of sentence. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.3. However, the authority to order that a term of imprisonment run concurrently to a term of imprisonment previously imposed remains limited by section 3585(a), and, even if a concurrent sentence is

---

[5]     Defendant also maintains that his counsel was ineffective for failing to move to dismiss the indictment based on an alleged violation of the anti-shuttling provision of the Interstate Agreement on Detainers. (Docket Nos. 59, 60).

ordered, the earliest date that the federal sentence *commences* is the date of sentencing.[6] Thus, applicable here,

> [i]f the Federal court expressly indicated an intention to have its sentence run concurrently with the non-Federal sentence, the Bureau of Prisons will designate the State correctional facility as the place for the defendant to serve his Federal sentence. In such cases, the Federal sentence will be deemed to commence upon imposition.

*Wiley v. Bureau of Prisons*, Civ. A. No. 09-156, 2010 WL 3620393, at *3 (W.D.Pa. Sept. 13, 2010).

Under 18 U.S.C. § 3585(b), the Bureau of Prisons has the exclusive authority to determine if a defendant is entitled to presentence credit for time served prior to the commencement of his sentence. *See United States v. Wilson*, 503 U.S. 329, 333-34 (1992); *Ruggiano v. Reish*, 307 F.3d 121, 132 (3d Cir. 2002). Section 3585(b) provides that:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). The final clause of section 3585(b) generally prohibits prior custody credit from being "double counted", meaning that the defendant will not receive presentence credit on his federal sentence for any time that is credited to another sentence. *See Mills v. Quintana*, 2010 WL 5027166, at *2 (3d Cir. Dec. 10, 2010) (not precedential). However, pursuant to Bureau of Prisons' policies consistent with *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993), and

---

[6] In this case, the earliest Defendant's sentence could commence would be the date of his sentencing, September 30, 2008.

*Willis v. United States,* 438 F.2d 923 (5th Cir. 1971) exceptions to the general rule against

"double counting" may apply if the federal and non-federal sentences were ordered to run

concurrent by the district court. *See Mills v. Quintana*, 2010 WL 2636073, at *4-5 (W.D. Pa.

Jun. 28, 2010).

Since the Bureau of Prisons has exclusive authority to award presentence credit under

section 3585(b), any order issued by a district court awarding "credit" to a defendant for time

served while in presentence custody is a non-binding recommendation to the Bureau of Prisons,

which it is not required to follow. *See Bailey v. Nash*, 134 Fed. Appx. 503, 506 (3d Cir. 2005)

(not precedential). Although a district court is restricted from granting presentence credit, in an

appropriate case, it can reach the same result by applying Guideline § 5G1.3(b) or Note 3(E).

*See* U.S.S.G. § 5G1.3(b), n.3(E). If the requirements of Guideline § 5G1.3(b) or Note 3(E) are

met, the district court has the ability to fashion a defendant's sentence to account for time served

while in presentence custody by granting a downward departure or an "adjustment" to the length

of the sentence.[7] *Id.*

In this case, Defendant was subject to an undischarged term of 1-2 years imprisonment

on a state matter as of the date of his sentencing, September 30, 2008. At that time, this Court

ordered that his federal sentence of seventy-seven (77) months imprisonment run concurrent to

this undischarged term of imprisonment. (Docket Nos. 44, 53). The Court did not grant

Defendant's motion for a variance and it did not grant a downward departure nor adjustment to

the length of Defendant's sentence under Guideline § 5G1.3. (Docket No. 44). In the

documents presented to the Court by Defendant, as of July 15, 2010, the Bureau of Prisons

calculated Defendant's sentence as commencing on October 22, 2008 and set forth a projected

---

[7]        As more fully set forth in section IV(b) *infra*, the facts and circumstances of Defendant's case did <u>not</u>
authorize either an adjustment or downward departure under Guideline § 5G1.3.

release date of April 12, 2014. (Docket No. 59-1). This Court lacks jurisdiction to review the Bureau of Prisons' calculation of Defendant's sentence. *See Wilson*, 503 U.S. at 333-34. Therefore, to the extent that Defendant challenges the calculation of his sentence by the Bureau of Prisons, including the commencement date of October 22, 2008, his projected release date, the applicability of *Kayfez* or *Willis* credit, or any other aspect of his sentence calculation, such challenge is not properly before this Court.

With this background, the Court will address the parties' arguments.

a. Procedural Default

The Government first argues that Defendant's claims are barred because he failed to raise his arguments on direct appeal. (Docket No. 65). Thus, the Government maintains that Defendant's claims are procedurally defaulted and cannot be raised in a § 2255 collateral proceeding. (*Id*.). Defendant contends that his claims are properly before the Court. (Docket No. 66).

"Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621, (1998)). Claims that are not raised on direct appeal are "procedurally defaulted" and cannot be used to collaterally attack a sentence unless a movant "can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default." *Id.* (citing *Bousley*, 523 U.S. at 622). Ineffective assistance of counsel claims are excepted from this general rule and such claims are properly raised in § 2255 proceedings, even if they could have been raised on direct appeal. *See Massaro v. Untied States*, 538 U.S. 500, 504 (2003). Since Defendant's ineffective assistance claims are

properly raised, the Court need not engage in a procedural default analysis as to those claims. Accordingly, the Court will only consider the Government's procedural default argument as to Defendant's due process claim.

To this end, Defendant has not claimed that he is actually innocent of the bank robbery; he argues only that his due process rights were violated at sentencing. Specifically, he maintains that his due process rights were violated at sentencing because this Court sentenced him based "upon a materially untrue assumption, belief, impression and/or misinformation, to wit, that Defendant would receive credit toward the sentence ultimately imposed for the time spent in federal custody." (Docket No. 60 at 5). This claim was not raised by Defendant in his appeal to the United States Court of Appeals for the Third Circuit. *See United States v. Zwick*, 350 Fed.Appx. 747 (3d Cir. 2009) (non-precedential). A criminal defendant's claim that a sentencing proceeding violated his due process rights is cognizable on appeal. *See United States v. Ausburn*, 502 F.3d 313, 327 (3d Cir. 2007) (holding that "our appellate review is broad enough to police any violations of due process"). Therefore, Defendant must demonstrate cause for his failure to raise the claim earlier and prejudice resulting from the error; otherwise this claim cannot be considered on collateral review. Given the nature of Defendant's arguments, "cause" and "prejudice" are interrelated and will be discussed together.

"[A] criminal defendant must be afforded due process at sentencing." *United States v. Mannino*, 212 F.3d 835, 846 (3d Cir. 2000) (citing *United States v. Palma*, 760 F.2d 475, 477 (3d Cir. 1985)); *Ausburn*, 502 F.3d at 322 (quoting *Gardner v. Florida*, 430 U.S. 349, 358 (1977)) ("the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause"). "However, the same degree of due process protection need not be afforded during the sentencing phase of a criminal proceeding as would be required at trial."

*Palma*, 760 F.2d at 477. But, "due process clearly guarantees all defendants the right to be sentenced under an accurate understanding of the law." *United States v. Eakman*, 378 F.3d 294, 302 (3d Cir. 2004). Moreover, a defendant's right to due process at sentencing is violated if a district court makes an error of law or fact that is of a "constitutional magnitude." *United States v. Eakman*, 378 F.3d 294 (3d Cir. 2004). In evaluating such a claim, "the appropriate test inquires whether (1) the district court made an objectively ascertainable error (one that does not require courts to probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence." *Eakman*, 378 F.3d at 301.

Defendant relies heavily on *United States v. Eakman* in support of his position that this Court erred in its understanding that Defendant would receive credit for the time he spent in federal custody prior to the Court's imposition of his sentence. (Docket No. 60). In this Court's estimation, *Eakman* is distinguishable from this matter as it was decided in light of the unique factual circumstances of that case. In *Eakman*, the district court sentenced the defendant to one year and one day imprisonment and further ordered that said "sentence should be served at a community corrections center with the defendant being granted immediate work release status." *Eakman*, 378 F.3d at 296. The defendant then commenced his sentence at the community corrections center. *Id*. Subsequently, the Department of Justice's Office of Legal Counsel issued a memorandum which provided that the Bureau of Prisons lacked the authority to designate a prisoner to serve a term of imprisonment at a community corrections center, the Bureau of Prisons changed its internal policies, and ordered that many of the defendants who were serving their sentences at community corrections facilities, including Eakman, be placed in prison to serve the remainder of their terms. *Id*.

In response, Eakman filed a § 2255 petition in district court. *Id.* The district court denied his motion without conducting an evidentiary hearing and he appealed. *Id.* On appeal, the United States Court of Appeals for the Third Circuit reversed and remanded the case for a hearing and further consideration. *Id.* at 302-03. In so holding, the Court of Appeals noted that because the district court recommended that Eakman serve his sentence at a community corrections center, he did not contemplate that the Bureau of Prisons lacked the discretion to order that the defendant serve his sentence of incarceration in such a facility and, indeed was aware of the Bureau's longstanding practice of entertaining that type of recommendation. *Id.* The Court of Appeals rejected the government's arguments that Eakman's claims were akin to those rejected by the Supreme Court in *United States v. Addonizio*, 442 U.S. 178 (1979) because "a sentencing court's expectations about the future course of discretionary parole proceedings [could not] give rise to an error of constitutional magnitude." *Eakman*, 378 F.3d at 300-01. In sum, the Court of Appeals found that Eakman had sufficiently alleged a claim under § 2255 asserting a violation of his due process rights.[8] *Id.*

This case does not involve the type of error that was alleged in *Eakman*. The alleged error in *Eakman* could be objectively ascertained from the sentencing record, including the district court's recommendation in its judgment and comments at sentencing, indicating that he believed that the Bureau of Prisons could lawfully place Eakman in a community corrections center. The subsequent change in policy by the Bureau of Prisons then undermined the district court's recommendation.

---

[8]     On remand, the district court denied Eakman's motion to vacate. *See Eakman v. Bureau of Prisons*, 2009 WL 1916237, at *2 (W.D.Pa. June 30, 2009). However, he later filed a § 2241 petition challenging certain aspects of the execution of his sentence, and the requested relief was granted. *Id.*

In this case, Defendant alleges that this Court erred by believing that he was entitled to presentence credit at sentencing when he was not entitled to such credit under the law,[9] but there is no mention of presentence credit anywhere in the sentencing record.  (*See* Docket Nos. 29, 32, 34, 36, 44).  Defendant even admits that there is a lack of any record of this alleged error.  (*See* Docket No. 60 at 6 ("this allegation is not specifically borne out by the existing record …").  In fact, he does not cite to the presentence investigation report, the parties' submissions to the Court prior to sentencing, the Court's Tentative Findings and Rulings, the sentencing transcript, or any other portion of the record, in support of his position that an objectively ascertainable error was made.  Instead, Defendant maintains that his due process claim was not available to him until the Court made comments regarding his case at a status conference held on September 28, 2010.  (Docket No. 66 at 2).

To this end, the Court recalls that it did make comments that it thought that given the concurrent sentencing by this Court and the state court that in some fashion Defendant might be eligible for presentence credit.  The Court further noted that although it could have made a recommendation to that effect to the Bureau of Prisons on Defendant's behalf, i.e., that he be given credit for time served, no such recommendation was made.  The Court also advised counsel that if an error was committed during the sentencing, the Court would be inclined to grant the motion to vacate and re-sentence the Defendant.  Moreover, it is clear that present defense counsel raises arguments that were not addressed by Defendant's trial counsel at sentencing and Defendant has provided the Court with certain information now that was not present in the sentencing record.  These comments by the Court are the substance of Defendant's

---

[9] Defendant summarily states that he is not entitled to presentence credit under the applicable law.  However, the record before this Court does not demonstrate that he has fully exhausted his administrative remedies within the Bureau of Prisons, and he has not challenged the calculation of his sentence in a § 2241 petition properly filed in the Middle District of Pennsylvania.

due process claim, but since they were made two years after the sentencing, they are not present in the sentencing record. [10]

Eakman is distinguishable not only because the asserted error is absent from the sentencing record, but, more fundamentally, because Defendant does not allege any policy changes or revised interpretations of existing laws by the Bureau of Prisons from the date of his sentencing until today which so undermine the fairness of the sentence imposed so as to violate Defendant's due process rights.

The Government likens this case to *Addonizio*, and argues that this Court's error, if any, was merely one of a faulty prediction as to the Bureau of Prisons' potential award of presentence custody credits to Defendant. (Docket No. 65). The Government maintains that such an error is not cognizable because the Bureau of Prisons has the exclusive authority to award presentence credit and the Court can only issue a non-binding recommendation that credit be awarded. (*Id.*).

The Court agrees. As noted above, the Bureau of Prisons is delegated the exclusive authority to calculate presentence credits to a prisoner's federal sentence. 18 U.S.C. 3585(b); *see also Wilson*, 503 U.S. at 333-34; *Ruggiano*, 307 F.3d at 132. Here, even if the Court's post-

---

[10]     The Court notes that Defendant concedes that:

> … the viability of this due process claim is necessarily dependent upon this Court clarifying and confirming that it gave "explicit attention" to, found its sentence "at least in part" on, or gave "specific consideration" to the materially untrue assumption, belief, impression and/or misinformation, as alleged.

(Docket No. 66 at 5-6). Thus, Defendant requests that the Court hold a hearing *now* for the purpose of developing a record of the Court's subjective intent *at the time of sentencing*. As our Court of Appeals recognized in *Eakman*, for a claim to be cognizable under § 2255, the alleged "error must be 'objectively ascertainable' in the sense that it does not depend on assessing the particular intention of the sentencing judge." *Eakman*, 378 F.3d at 299. This type of inquiry is improper because it would "invite a tour through [the judge's] cranium, with [the judge] as the guide." *Eakman*, 378 F.3d at 299 (citing *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987)). Moreover,

> [a]s a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment. … If the record is ambiguous, and if a § 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing.

*Eakman*, 378 F.3d at 299.

sentencing comments were considered, the Court, at most, may have recommended to the Bureau of Prisons that Defendant be granted presentence credit to the extent he was eligible. Any such recommendation is non-binding as to the Bureau of Prisons. *See Bailey*, 134 Fed.Appx. at 506. The Court may have even expected or predicted that some form of credit would be awarded and that expectation has been frustrated to this point. However, this Court's faulty prediction as to the Bureau of Prisons' exercise of its discretionary function to evaluate Defendant's eligibility for presentence credit under 18 U.S.C. § 3585(b) does not undermine the lawful sentence which was imposed by this Court and affirmed by the Court of Appeals. As in *Addonizio*, this Court may have had expectations about the potential award of credit in Defendant's case, "[b]ut the actual decision is not [its] to make, either at the time of sentencing or later if [its] expectations are not met." *Eakman*, 378 F.3d at 299 (quoting *Addonizio*, 442 U.S. at 2235). And, to permit the use of a § 2255 motion to collaterally attack Defendant's sentence in the present circumstances would frustrate congressional intent that the Bureau of Prisons be entrusted to exercise its discretion under 18 U.S.C. § 3585. *Id.* Therefore, Defendant's § 2255 claim alleging a due process violation must fail.

This holding is further buttressed by the fact that the Court *sua sponte* ordered that the federal sentence be served concurrently to the undischarged state sentence, as is permitted under Guideline § 5G1.3(c).[11] To the extent Defendant maintains that he was entitled to a further reduction of the length of his sentence and/or a downward departure under Guideline § 5G1.3 at the time of his sentencing, as discussed in further detail below, he was not entitled to same because the state and federal sentences at issue in this case were unrelated. Thus, because the Court ordered that Defendant's sentence shall run concurrently to the state sentence, all of the

---

[11]        *See* analysis set forth in section IV(b)(i), *infra*.

relief that was available to Defendant under Guideline § 5G1.3 at the time of his sentencing was ordered by the Court. [12]

In sum, Defendant cannot demonstrate a due process violation based on his present allegations nor has he established cause or prejudice for his failure to raise his due process argument either at sentencing or on appeal to the United States Court of Appeals for the Third Circuit. Accordingly, Defendant's motion to vacate is denied as his claim is procedurally defaulted and otherwise outside the purview of collateral review under 28 U.S.C. § 2255.

In a related argument, Defendant also contends that the Court relied "upon a materially untrue assumption, belief, impression and/or misinformation, to wit, that Defendant would receive a *partially concurrent sentence*, which allegation is clearly [borne] out by the existing record as evidenced by the Court directing the sentence ultimately imposed to run concurrent to the state sentence." (Docket No. 60 at 6 (emphasis added)). To this end, Defendant maintains

---

[12]     Since this matter was raised, the Court has reviewed other criminal files in order to determine the merits of Defendant's contention that it misunderstood the law at the time of sentencing. Based on this review, it is apparent that the Court did not operate under any misunderstanding of the law as it properly applied Guideline § 5G1.3 in other cases prior to Defendant's sentencing. For example, on March 7, 2008, the Court applied Guideline § 5G1.3(b) in *United States v. Tyler*, Cr. No. 07-41. There, the Court sentenced *Tyler* to:

> forty-six (46) months at each of Counts 1 and 3, minus twenty-six (26) months sixteen (16) days, for a final sentence of nineteen (19) months fifteen (15) days, at each of Counts 1 and 3 said terms to be served concurrently and to run concurrent with the 1 to 2 year State Court Sentence the defendant is currently serving at CC200511843. Pursuant to § 5G1.3(b) of the United States Sentencing Guidelines, the Court finds that defendant's sentence should be adjusted and reduced by said 26 months 16 days. The Court notes that the defendant's undischarged term of imprisonment is the said one to two year sentence the defendant is currently serving at CC200511843. The sentence imposed in this matter is a sentence reduction pursuant to 5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons.

(Cr. No. 07-41, Docket No. 67). Then, about a week before Zwick's sentencing, on September 22, 2008, in another matter where Guideline § 5G1.3(b) was not applicable, the Court sentenced Defendant Stephen Holmes to "one hundred ten (110) months, said term to be served concurrently to any undischarged term that the defendant is currently serving." (Cr. No. 07-282, Docket No. 115). The same type of concurrent sentence was imposed in this case a week later.

that because he is serving a consecutive sentence, rather than a concurrent or partially concurrent sentence as was ordered by the Court, his due process rights were violated at sentencing.  (*Id*.).

Despite his counsel's assertions to the contrary, Defendant clearly challenges only the execution of his sentence and not the validity of it in this second claim.  *See Eakman*, 378 F.3d at 297.  Specifically, he does not challenge the Court's ability to order that a sentence be served partially concurrent to an undischarged term of imprisonment nor that the Court misunderstood the law.  Instead, he essentially argues that his due process rights were violated because the Bureau of Prisons improperly calculated his sentence and is requiring him to serve a consecutive sentence rather than the concurrent sentence that was ordered.  Thus, by way of this argument, Defendant challenges the execution of his sentence, only.  *Id*.

As noted above, a challenge to the determination of when Defendant's sentence commences, and its corollary, whether the federal sentence was ordered to run concurrent to the state sentence, is a determination made by the Bureau of Prisons pursuant to 18 U.S.C. § 3585(a).  If Defendant maintains that his sentence is miscalculated, he must raise a claim under 28 U.S.C. § 2241 against the custodian of the prison in the district where he is incarcerated, the United States District Court for the Middle District of Pennsylvania.  *See also United States v. Smith*, 355 Fed.Appx. 656, 657-58 (3d Cir. 2009) (challenge to computation of sentence by the Bureau of Prisons properly raised in § 2241 petition in district where the defendant is incarcerated).  Moreover, this claim can only be raised after Defendant has exhausted all of his administrative remedies.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241.").

The Court notes that it does not appear from the present record that Defendant has exhausted his administrative remedies to this point. The record shows only that present defense counsel drafted a letter to the Bureau of Prisons Designation and Computation Center in Grand Prairie, Texas in 2010 requesting that his sentence be recalculated. (Docket No. 59-2). In response, a Bureau of Prisons' representative advised that if Defendant is dissatisfied with the calculation, he may appeal the decision pursuant to the "established administrative remedy procedures." (*Id*.). There is no evidence that this appeal procedure has been invoked. Therefore, although this Court has the authority to transfer a petition over which it does not have jurisdiction, 28 U.S.C. § 1631,[13] because Defendant has not demonstrated that he has exhausted his administrative remedies, the "interests of justice" are not served by such a transfer. Accordingly, to the extent that Defendant's claim is properly construed as a petition under 28 U.S.C. § 2241, said claim is dismissed, without prejudice.

For these reasons, to the extent that Defendant moves to vacate his sentence based on an alleged due process violation, his motion is denied. However, to the extent that his motion is more properly construed as a petition under § 2241, said claim is dismissed, without prejudice to Defendant re-filing same in the proper district after exhausting the applicable administrative remedies.

---

[13]    Section 1631 provides that:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

b.  <u>Ineffective Assistance of Counsel</u>

Defendant also moves to vacate his sentence on the basis of alleged ineffective assistance of his trial counsel, Linda Cohn, Esquire.  (Docket Nos. 59, 60).  The legal standard applicable to ineffective assistance of counsel claims was set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense."  *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same).  However, counsel will not be found ineffective for failure to raise a meritless claim.  *See Real v. Shannon*, 600 F.3d 302, 310 (3d Cir. 2010).

Defendant urges that his trial counsel was ineffective in two areas: (1) that she failed to advocate at sentencing that Guideline § 5G1.3 be applied to his case; and (2) that she failed to move to dismiss the charge against him based on an alleged violation of the Interstate Agreement on Detainers Act, 18 U.S.C.App. 2, § 2.  (Docket Nos. 59, 60).  The Government maintains that defense counsel was not ineffective in these areas.  (Docket No. 65).  The Court will address each argument, in turn.

i.  *Guideline § 5G1.3*

In this Court's estimation, defense counsel was not ineffective for failing to argue that Defendant's sentence be adjusted and/or that he be granted a downward departure under Guideline § 5G1.3 because he was not entitled to an adjustment or departure under section

5G1.3.  Guideline § 5G1.3, Imposition of a Sentence on a Defendant Subject to an Undischarged

Term of Imprisonment, provides as follows:

> (a) If the instant offense was committed while the defendant was
> serving a term of imprisonment (including work release, furlough,
> or escape status) or after sentencing for, but before commencing
> service of, such term of imprisonment, the sentence for the instant
> offense shall be imposed to run consecutively to the undischarged
> term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment
> resulted from another offense that is relevant conduct to the instant
> offense of conviction under the provisions of subsections (a)(1),
> (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the
> basis for an increase in the offense level for the instant offense
> under Chapter Two (Offense Conduct) or Chapter Three
> (Adjustments), the sentence for the instant offense shall be
> imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of
> > imprisonment already served on the undischarged term of
> > imprisonment if the court determines that such period of
> > imprisonment will not be credited to the federal sentence
> > by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to
> > run concurrently to the remainder of the undischarged term
> > of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged
> term of imprisonment, the sentence for the instant offense may be
> imposed to run concurrently, partially concurrently, or
> consecutively to the prior undischarged term of imprisonment to
> achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3.  Subsections (a) and (b) are not applicable to this case.  Subsection (a)

demands that a consecutive sentence be imposed if the defendant committed the federal offense

while still serving an undischarged term of imprisonment, however, Defendant was not serving

any state sentence of imprisonment when he committed the bank robbery which resulted in the

instant federal conviction.  U.S.S.G. § 5G1.3(a).  Subsection (b) only applies if the two sentences

are for criminal convictions that are considered "relevant conduct" under the Guidelines, but, the federal and state offenses are wholly unrelated in this case. *See United States v. Parker*, 512 F.3d 1037, 1040 (8th Cir. 2008) (defendant not entitled to downward departure or adjustment under § 5G1.3(b) when the federal sentence is unrelated to the undischarged state sentence); *Lee v. United States*, 2010 WL 2471750, at *8-9 (M.D. Pa. Jun. 16, 2010) (same). Thus, the only provision potentially applicable is subsection (c).

Subsection (c) permits the Court to order that a defendant's sentence be served consecutively, concurrently, or partially concurrent to an undischarged term of imprisonment. U.S.S.G. § 5G1.3(c). Based on the sentencing record, defense counsel did not advance any argument nor advocate any position on Defendant's behalf under this subsection. (Docket Nos. 29, 32, 34, 36, 44). However, Defendant was clearly not prejudiced by counsel's failure to raise this issue. First and foremost, the Court ordered that the Defendant's federal sentence run concurrently to the undischarged term of imprisonment. (Docket No. 44 at 47:21-22; 53). Thus, even if it were objectively unreasonable for defense counsel to fail to raise this issue at sentencing, the Court cured any such failure by *sua sponte* ordering a concurrent sentence. Second, for the reasons stated below, Defendant was not entitled to either an adjustment or downward departure under Guideline § 5G1.3 as Defendant advocates at this stage because Application Note 3(E) to Guideline § 5G1.3 expressly precludes both an adjustment to the length of a sentence and a downward departure in circumstances such as those present in this case.

Application Note 3(E) provides, as follows:

> (E) Downward Departure.--Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly

> depart. This may occur, for example, in a case in which the
> defendant has served a very substantial period of imprisonment on
> an undischarged term of imprisonment that resulted from conduct
> only partially within the relevant conduct for the instant offense. In
> such a case, a downward departure may be warranted to ensure that
> the combined punishment is not increased unduly by the fortuity
> and timing of separate prosecutions and sentencings. Nevertheless,
> it is intended that a departure pursuant to this application note
> result in a sentence that ensures a reasonable incremental
> punishment for the instant offense of conviction.

U.S.S.G. § 5G1.3, n.3(E).  Pursuant to Note 3(E), an adjustment to the length of Defendant's

sentence was not authorized under Guideline § 5G1.3(c).  *Id.*  Moreover, the circumstances of

this case were not sufficiently extraordinary to warrant a downward departure because Defendant

did not spend a fortuitous amount of time in state custody as a result of the federal prosecution.

Indeed, he was sentenced to 1-2 years by the state court on December 17, 2007 and released

from that sentence on October 22, 2008, without serving a full year of incarceration.  Therefore,

Defendant did not spend an unwarranted amount of time incarcerated due only to the "fortuity

and timing of the separate prosecutions and sentencings", so as to warrant a downward departure.

Defendant cites *United States v. Brannan*, 74 F.3d 448 (3d Cir. 1996) for the proposition

that "[t]here is no question [sic] that a sentencing judge has the discretion to adjust a defendant's

sentence so as to account for time served on an unrelated state conviction for which the

defendant will receive no credit."  However, *Brannan* involved *related* state and federal

convictions and that decision does not suggest that a district court has discretion to grant a

downward departure or adjustment under Guideline § 5G1.3 when a defendant is sentenced for

multiple unrelated convictions, as Defendant urges.  To the contrary, as noted above, the plain

language of Guideline § 5G1.3 and the relevant application notes preclude both an adjustment

and a downward departure in this case because the state and federal offenses are *unrelated*.

In sum, Defendant has failed to raise a colorable claim of ineffective assistance of counsel based on trial counsel's failure to raise Guideline § 5G1.3 at sentencing. *See Lee*, 2010 WL 2471750, at *8-9 (trial counsel not ineffective for failing to raise Guideline § 5G1.3 when defendant was not entitled to an adjustment or downward departure under the guideline). Defendant was not entitled to an adjustment or downward departure under that guideline provision and counsel cannot be ineffective for failing to raise an unmeritorious claim. *See Real*, 600 F.3d at 310 (counsel not ineffective for failure to raise an unmeritorious claim). Moreover, Defendant was not prejudiced by the failure of counsel to argue that his federal sentence should run concurrent to his undischarged state sentence, as the Court ordered a concurrent sentence *sua sponte*. For these reasons, Defendant's ineffective assistance of counsel claim, based on trial counsel's failure to raise Guideline § 5G1.3 at sentencing, is denied.

### ii. Interstate Agreement on Detainers Act

Defendant alternatively alleges that his counsel was ineffective for an alleged failure to move to dismiss the charge against him under the Interstate Agreement on Detainers Act ("IADA"), 18, U.S.C.App. 2, § 2. (Docket Nos. 59, 60). He claims that the federal government violated the "anti-shuttling provision" of the IADA when, after taking custody of him by virtue of a writ of habeas corpus *ad prosequendum*, he was mistakenly returned to state custody at SCI-Greene prior to being tried on the instant federal bank robbery charge. (*Id*.). He avers that his counsel was ineffective for failing to bring this violation to the Court's attention and to move to dismiss the Indictment on this basis. (*Id*.). The Government argues that the IADA was not violated and that Defendant's counsel was not ineffective for failing to raise the issue before the District Court. (Docket No. 66).

The IADA is an agreement between the federal government, the District of Columbia, and forty-eight states (excluding Mississippi and Louisiana). 18, U.S.C.App. 2, § 2; *Munez v. United States*, 2010 WL 2925917, at *4 (D.N.J. July 21, 2010). "The [IADA] creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). "The [IADA] provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Id*. The IADA requires that a receiving state bring a prisoner to trial within one-hundred and twenty (120) days. 18 U.S.C.App. 2, §2, art. IV(c). In addition, the "anti-shuttling provision" of the IADA mandates, among other things, that an indictment against the prisoner be dismissed if the prisoner is returned to the original place of imprisonment prior to being brought to trial in the receiving state. 18 U.S.C.App. 2, §2, art. IV(e); *see also Munez*, 2010 WL 2925917, at *4.

As noted, Defendant argues that his counsel should have raised the "anti-shuttling provision" as a defense in this case and, thus, provided ineffective assistance of counsel to him. However, in *United States v. Mauro*, 426 U.S. 340 (1978), the Supreme Court held that a writ of habeas corpus *ad prosequendum* is not a "detainer" under the IADA. Therefore, if a prisoner is taken into custody under a writ of habeas corpus *ad prosequendum* without a detainer first being lodged against the prisoner, the IADA does not apply. *Id*. The United States Court of Appeals for the Third Circuit and other Courts of Appeals have reasoned similarly. *See, e.g.*, *United States v. Dobson*, 585 F.2d 55, n.3 (3d Cir. 1978) ("In *Mauro*, the Supreme Court held that obtaining a prisoner from another jurisdiction by way of a writ of habeas corpus Ad

prosequendum will not trigger the operation of the [IADA] unless a Detainer has been lodged with the authority holding the prisoner."); *United States v. Fulford*, 825 F.2d 3, 11 (3d Cir. 1987) ("a writ of habeas corpus *ad prosequendum* does not trigger the IADA provisions in a federal case unless a detainer previously had been filed by federal authorities."); *United States v. Jones*, 938 F.2d 447, 449 (3d Cir. 1991) ("Because there was no detainer, the [IADA] was not triggered and could not have been violated"); *United States v. Dowdell*, 595 F.3d 50, 63 (1st Cir. 2010) ("The [IADA] only applies to prisoners against whom detainers have been filed."); *United States v. Beard*, 41 F.3d 1486, 1489 (11th Cir. 1995) ("Because a detainer was never filed, the protections of IADA were never triggered.").

Here, there is no allegation that a detainer was ever lodged against Defendant while he was initially in state custody. Instead, he was brought into federal custody via a writ of habeas corpus *ad prosequendum*.[14] (Docket Nos. 5, 6, 7). He was later ordered detained by Magistrate Judge Mitchell and remained in federal custody through his change of plea and sentencing

---

[14]

The Government filed an Application and Order for Writ of Habeas Corpus Ad Prosequendum on December 6, 2007, which provided as follows:

> The undersigned Assistant United States Attorney hereby applies to the Court for the issuance of a writ of habeas corpus *ad prosequendum*, and avers:
>
> 1. Name of Detainee: James Raymond Zwick, Inmate No. 54718, Year of Birth: 1958, White, Male.
> 2. Detained by: Allegheny County Jail, 950 Second Avenue, Pittsburgh, PA 1529.
> 3. Detainee is charged in this district by Indictment, charging detainee with violating Title 18, United States Code, Section 2113(a).
> 4. Detainee is presently confined in the Allegheny County Jail, Pittsburgh, PA, awaiting disposition of state charges.
> 5. The above case is set for initial hearing at Pittsburgh, PA on December 28, 2007, at 9:45 a.m., and it shall therefore be necessary for detainee to be present in Court at that time.
> 6. The Warden of the Allegheny County Jail, Pittsburgh, PA, has no objection to the granting of this petition.

(Docket No. 5). Magistrate Judge Mitchell granted the application and ordered that Defendant appear for his initial appearance on December 28, 2007. (Docket No. 6).

proceedings.[15] (Docket Nos. 11, 17, 39). Therefore, because no detainer was filed, the IADA was never triggered and could not have been violated during the mistaken transfer of Defendant to SCI-Greene. *See Mauro*, 436 U.S. at 360-61; *see also Jones*, 938 F.2d at 449. As a consequence, defense counsel was not ineffective for failing to raise an unmeritorious claim. *See Real*, 600 F.3d at 310 (counsel not ineffective for failure to raise an unmeritorious claim). Accordingly, Defendant has failed to raise a colorable ineffective assistance of counsel claim under section 2255 based on an alleged failure to raise a violation of the IADA and, to the extent that his motion to vacate relies on same, said motion is denied.[16]

### iii. Conclusion as to Ineffective Assistance of Counsel Claims

Based on the foregoing, Defendant has failed to raise a colorable claim alleging ineffective assistance of his trial counsel. Accordingly, his motion to vacate is denied to the extent that he contends that he was provided ineffective assistance of counsel.

## V. CERTIFICATE OF APPEALABILITY

Defendant has not demonstrated a "substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2), and the Court finds that he is not entitled to a certificate of appealability on any of the claims asserted in his pleadings.

---

[15] The Court notes that the writ of habeas corpus *ad prosequendum* was returned executed by the U.S. Marshal Service and filed with the Court on October 7, 2008. (Docket No. 39). The executed writ indicates that in was executed in part on December 28, 2007, wherein the U.S. Marshal Service took custody of Defendant at Allegheny County Jail and then, after the proceeding, transported him back to the U.S. Marshal Service cell block and the Allegheny County Jail. (*Id.*). The writ was then fully executed on October 1, 2008, when the Defendant was transported by the United States Marshal Service to the Allegheny County Jail after his sentencing proceeding. (*Id.*).
The Court further notes that U.S. Marshal Service Individual Custody and Detention Report USM 129 submitted by Defendant demonstrates that there was never an active detainer filed against him by the U.S. Marshal Service. (See Docket No. 50 at 2).
[16] The Government also argues that Defendant cannot pursue habeas relief relying on the alleged violation of the IADA because he later pled guilty to the underlying offense. While it is true that by pleading guilty Defendant waived the right to independently assert a § 2255 claim under the IADA, *see United States v. Palmer*, 574 F.2d 164, 166 (3d Cir. 1978), an ineffective assistance of counsel claim alleging a failure to move to dismiss the charge under the IADA prior to a defendant's plea may not be so barred, *see Munez*, 2010 WL 2925817, at *5-6. However, given that the Court has denied Defendant's motion on an alternative basis, it need not address this argument.

VI. CONCLUSION

Based on the foregoing, Defendant's motion to vacate [59] is denied as he has failed to raise colorable § 2255 claims alleging a due process violation or ineffective assistance of counsel.  However, to the extent that Defendant's due process claim is more properly construed as a challenge to the execution of his sentence by the Bureau of Prisons, i.e., a claim that his sentence was improperly calculated by the Bureau of Prisons under 18 U.S.C. § 3585, said claim dismissed, without prejudice.  An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Date:   February 14, 2011

cc/ecf:  All counsel of record.

James Raymond Zwick c/o Frank Acuri, Esq.

Linda Cohn, Esq.